803 A.2d 139 (2002)
353 N.J. Super. 405
STATE of New Jersey, Plaintiff-Respondent,
v.
Armel LASHLEY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 12, 2002.
Decided July 25, 2002.
*140 Peter A. Garcia, Acting Public Defender, for appellant (Steven M. Gilson, Designated Counsel, of counsel and on the brief).
Wayne J. Forrest, Somerset County Prosecutor, for respondent (James L. McConnell, Assistant Prosecutor, of counsel and on the brief).
Appellant filed a pro se supplemental brief.
Before Judges STERN, EICHEN and COLLESTER.
The opinion of the court was delivered by STERN, P.J.A.D.
After his motion to suppress was denied, defendant was convicted by jury of eight counts of an indictment charging him with conspiracy, and possessory and distribution violations of the controlled dangerous substances laws involving cocaine on four days in 1998. After merger of offenses, he was sentenced to an aggregate term of eleven years in the custody of the Commissioner of Corrections with three years to be served before parole eligibility.
On this appeal defendant argues:
POINT I DUE TO THE STATE'S UNCONSTITUTIONAL SEARCH AND SEIZURE, DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE SHOULD HAVE BEEN GRANTED.
POINT II DUE TO DEFENDANT'S CONSTITUTIONAL RIGHT AGAINST SELF-INCRIMINATION HAVING BEEN VIOLATED, HIS CONFESSION SHOULD HAVE BEEN DEEMED INADMISSIBLE.
POINT III DEFENDANT'S SENTENCE MUST BE VACATED. (PARTIALLY RAISED BELOW)
A. The Extended Term Must Be Vacated Because The Prosecutor's Decision To Seek The Extended Terms Was An Arbitrary And Capricious Exercise Of Prosecutorial Discretion.
B. The Sentencing Court Erred By Recognizing Inappropriate Aggravating Factors. (Not Raised Below)
In his pro se supplementary brief defendant adds the following: POINT I THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO INSTRUCT THE JURY THAT DRUG QUANTITY IS A[] NECESSARY ELEMENT TO THE UNDERLYING OFFENSE SET FORTH IN THE *141 POSSESSION COUNTS OF THE INDICTMENT. (Not Raised Below.) U.S. CONST. AMENDS. V, VI, AND XIV.
A.) Is Drug Quantity An Element Of The Offense Charged? POINT II THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT DENIED THE DEFENDANT HIS OPPORTUNITY TO CROSS EXAMINE AND CONFRONT THE CONFIDENTIAL INFORMANT WHOSE IDENTITY WAS KNOWN, WHICH DENIED THE DEFENDANT A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION. [Not Raised Below.]
A.) The Prosecutor During Summation Engaged In Improper Remarks By Bolstering And Vouching For The Credibility Of The State[`]s Witnesses Causing Prejudicial Harm To Deprive The Defendant [of] A Fair Trial. POINT III THE JURY SELECTION PROCEDURES FROM WHICH THE DEFENDANT[`]S JURY WAS SELECTED DID NOT REPRESENT A FAIR CROSS SECTION OF THE COMMUNITY BY EXCLUDING AFRICAN-AMERICANS DENYING DEFENDANT A FUNDAMENTALLY FAIR TRIAL. [Not Raised Below.] U.S. CONST. AMENDS. VI, VIX [sic]; N.J. CONST. (1947) ART. 1. PARA. 9, 10. [Not Raised Below.]
Our review of the record convinces us that the defendant's motion to suppress was improperly denied, and that the introduction of evidence following the entry of defendant's apartment without a warrant on October 20, 1998 requires a reversal of the convictions on the counts of the indictment charging defendant with crimes on that day. We also remand for consideration of the impact of defendant's custodial statements on the other convictions.
The testimony at the motion to suppress reflects that, by use of a confidential informant, an undercover officer made purchases from defendant on July 20, July 22 and October 7, 1998. On October 20, 1998, after being given cocaine purchased from defendant by the informant, investigators "entered the apartment" to "secure" it until they could obtain a search warrant. Items were observed in "plain view" upon the entry and additional evidence was seized after a warrant was obtained and a search was conducted pursuant to the warrant.
Officers entered the apartment by the use of a steel "ram" before the warrant issued. A Superior Court judge issued the warrant after the police had entered the apartment and observed what they described in the application. The motion judge concluded that because the courthouse was right across the street, the police had "secured" the building and could have prevented ingress and egress into the apartment, and defendant and co-defendant Hinson were apparently unaware of the ongoing investigation, the factors allowing such emergent entry did not apply. There is no challenge to that conclusion by the State on this appeal, and no contention that there were "exigent circumstances" justifying the entry without a warrant.
The motion judge nevertheless denied the motion to suppress, and the State seeks to uphold the denial, on the ground that the case fell within the "independent source" and "inevitable discovery" exceptions to the warrant requirement. The theory is that the police entered the premises to secure it while they obtained a warrant and they would have, in any event, obtained the warrant (and in fact obtained *142 it), so they would have been able to enter the apartment lawfully and observe what they saw. Hence, the State asserts that even if the issuing judge could not consider the evidence observed upon the illegal entry, the remainder of the application for the warrant justified its issuance, and the warrant provided an "independent source" for the search which "inevitably" would have resulted in the seizure. Recent Fourth Amendment cases suggest that evidence obtained upon an illegal entry does not have to be suppressed under the exclusionary rule if it would have been obtained by an "independent source" or "inevitable discovery."
Generally, both probable cause and exigent circumstances are required under the Fourth Amendment before a dwelling can be entered without a warrant. Kirk v. Louisiana, ___ U.S. ___, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002) (granting certiorari, reversing the denial of a motion to suppress the warrantless search in the absence of both probable cause and exigent circumstances, and permitting an "independent source" issue to be raised on remand); State v. Lewis, 116 N.J. 477, 561 A.2d 1153 (1989); State v. Hutchins, 116 N.J. 457, 561 A.2d 1142 (1989).
In light of the judge's undisputed fact-finding about the lack of exigency, we do not believe that the "inevitable discovery" and "independent source" doctrines can be utilized to permit admission of evidence found in the apartment. If we were to uphold the denial of the motion to suppress in this case, the police could decide to enter a home without a warrant, and without both probable cause and exigent circumstances, in order to "secure" the evidence, whenever they believe they have probable cause to obtain a search warrant. This rationale is inconsistent with basic principles which flow from our Supreme Court's interpretation of N.J. Const. art. I, par. 7, if not the Fourth Amendment, in a State that does not recognize the "good faith" exception to the warrant requirement, see State v. Novembrino, 105 N.J. 95, 157-59, 519 A.2d 820 (1987), and requires both probable cause and exigent circumstances for a warrantless search of an automobile, State v. Cooke, 163 N.J. 657, 664-71, 751 A.2d 92 (2000). See also, e.g., State v. Carty, 170 N.J. 632, 650-51, 790 A.2d 903, modified by order, ___N.J.___, ___ A.2d ___, 2002 WL 788754 (2002); State v. Pierce, 136 N.J. 184, 209, 642 A.2d 947 (1994); State v. Hunt, 91 N.J. 338, 345-48, 450 A.2d 952 (1982); State v. Alston, 88 N.J. 211, 225-27, 236, 440 A.2d 1311 (1981) (affording greater protection to citizens of New Jersey under State Constitution in cases involving motions to suppress evidence in criminal cases); Braithwaite, "An Analysis of the `Divergence Factors': A Misguided Approach to Search and Seizure Jurisprudence under the New Jersey Constitution," 33 Rutgers Law Journal 1 (2002) (urging "primary" decision making under art. I, par. 7 of the State Constitution, as opposed to deciding if there is a basis for "deviating" from the Fourth Amendment).
The State relies on Murray v. United States, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), in which the Supreme Court held that the "independent source" doctrine applies "to evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality," 487 U.S. at 537, 108 S.Ct. at 2533, 101 L. Ed.2d at 480, that is, "evidence acquired by an untainted search which is identical to the evidence unlawfully acquired." 487 U.S. at 538, 108 S.Ct. at 2534, 101 L.Ed.2d at 481 (emphasis *143 omitted).[1] But in doing so, the Supreme Court noted the risk the government would have in proving that nothing obtained by the illegal entry affected the proofs necessary to "establish probable cause before a magistrate." 487 U.S. at 540, 108 S.Ct. at 2534-35, 101 L.Ed.2d at 481. Moreover, the Murray court also noted that "[i]n applying for the warrant, the agents [in that case] did not mention the prior entry, and did not rely on any observations made during that entry." 487 U.S. at 535-36, 108 S.Ct. at 2532, 101 L.Ed.2d at 479. The Court remanded "for [a] determination [of] whether the warrant-authorized search of the warehouse was an independent source of the challenged evidence," 487 U.S. at 543-44, 108 S.Ct. at 2536, 101 L.Ed.2d at 484, that is, for a determination as to whether "the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence," as opposed to that "seen during the initial entry." 487 U.S. at 542, 108 S.Ct. at 2536, 101 L.Ed.2d at 483.
Here, cocaine and packaging paraphernalia were observed upon entry and that observation was referred to during the oral application to a Superior Court judge for the warrant.[2] Moreover, the entry in this case appears to have been unannounced and with the aid of a steel "ram" to break down defendant's door. Accordingly, we hold that the warrant must be invalidated under the State Constitution, if not the federal, because of the unlawful warrantless forced entry of the dwelling without exigent circumstances.
In State v. Chaney, 318 N.J.Super. 217, 723 A.2d 132 (App.Div.1999), the trial court suppressed evidence because "the application for the search warrant contained information obtained during [an] unlawful entry ... [despite the fact the warrant] contained other information sufficient to establish probable cause." 318 N.J.Super. at 220-21, 723 A.2d 132. Despite the fact "the warrant affidavit included a description of the apparent contraband which the police had seen during their prior unlawful entry" into defendant's motel room, 318 N.J.Super. at 221, 723 A.2d 132, we reversed the suppression because the "affidavit submitted in support of an application for a search warrant contain[ed] lawfully obtained information which establishe[d] the probable cause required for a search." Ibid. Our decision was based, in part, on the "independent source" doctrine under which "`evidence that was in fact discovered lawfully, and not as a direct or indirect result of illegal activity, is admissible,'" id. at 222, 723 A.2d 132, and because "a search warrant issued on the basis of an affidavit containing unlawfully obtained information may be valid if the affidavit also contains other lawfully obtained information which establishes probable cause required for the *144 search." Id. at 223, 723 A.2d 132. Therefore, following the Murray rationale, Judge Skillman noted that by requiring suppression, "the government clearly would be placed in a `worse position' than if it had not engaged in a prior unlawful search." Id. at 224, 723 A.2d 132. We held "that Murray did not change the rule that the validity of a search warrant issued on the basis of an affidavit containing unlawfully obtained information turns on whether the unlawfully obtained information set forth in the affidavit establishes the probable cause required to justify the search," id. at 225, 723 A.2d 132, and that the affidavit there involved "set forth [sufficient] facts independent of the evidence obtained in the initial [illegal] entry." Ibid.
In Chaney, the entry into the motel room was based on the belief that Chaney was the subject of "two outstanding arrest warrants for a person with [his] name" and that the motel was his last known address. Id. at 220, 723 A.2d 132. Only after the search warrant was issued did the police "discover[ ] that the Walter Chaney who was the subject of the outstanding arrest warrants which they sought to execute upon their initial entry into Room 307 was not the defendant." Ibid. Chaney was a case in which the police had "objectively reasonable grounds for believing that they were authorized to enter the motel room to execute the [arrest] warrants" and "[c]onsequently, there [was] no basis for arguing that the initial entry ... constituted flagrant police misconduct...." Id. at 226-27, 723 A.2d 132. We distinguish Chaney and conclude that it is inapplicable to the facts of this case.
Here, independent of the issue concerning reference in the application for a warrant to items observed in the apartment during the illegal entry, the police entered the apartment by use of a steel "ram," apparently without knocking and announcing themselves, in the absence of exigent circumstances. But see State v. Ventura, 353 N.J.Super. 251, 802 A.2d 545 (App.Div. 2002); State v. Alvarez, 238 N.J.Super. 560, 569-71, 570 A.2d 459 (App.Div.1990). Thus, the warrantless entry of the dwelling was not only unlawful in the absence of both probable cause and exigent circumstances, but the method of entry was unjustified in the record, and therefore the evidence must be suppressed. United States v. Dice, 200 F.3d 978, 984-86 (6th Cir.2000). See also United States v. Madrid, 152 F.3d 1034, 1041 (8th Cir.1998), rehearing en banc denied, 160 F.3d 502 (8th Cir.); Chaney, supra, 318 N.J.Super. at 226-27, 723 A.2d 132 (noting "this is not a case where the police deliberately conducted an unlawful search for the purpose of confirming the presence of contraband before applying for a warrant" and "there [was] no basis for arguing that the initial entry into the motel room constituted such flagrant police misconduct that the evidence subsequently obtained pursuant to the warrant should be suppressed to deter similar future violations of constitutional rights"). As "[t]he goal of the exclusionary rule is to prevent `insolence in office' and `deter' government officers from violating the law," Tartaglia v. Paine Webber, Inc., 350 N.J.Super. 142, 148, 794 A.2d 816 (App.Div.2002) (quoting Novembrino, supra, 105 N.J. at 165, 519 A.2d 820 (Handler, J. concurring)); State v. Bisaccia, 58 N.J. 586, 591, 279 A.2d 675 (1971) (Weintraub, C.J.); State v. Calcagno, 120 N.J.Super. 536, 537, 295 A.2d 366 (App. Div.1972), the exclusionary rule must be utilized to deter such illegal entries into a dwelling.
We reverse the convictions on counts seven, eight and ten, relating to October 20, 1998 based on the introduction of evidence obtained as a result of the illegal entry and search. Defendant does not *145 contend that the State would be precluded from retrying him for offenses occurring on October 20, 1998 based on evidence obtained independent of the illegal entry, that is, the cocaine previously sold to the undercover officer.
We find no basis for disturbing the admission of defendant's statements based on his assertion that it was part of a "deal" he made and involuntary. Defendant does not expressly assert that the illegal entry and seizure of evidence (and a reversal of the denial of the motion to suppress) itself affects the voluntariness or admissibility of his statement which was introduced into evidence. However, one of the statements admits prior distribution as well as his activities on October 20, 1998. We do not conclude that the statement is inadmissible, in whole or in part, particularly because there is no challenge to the legality of defendant's arrest. See, generally, State v. Carty, supra, 170 N.J. at 656-61, 790 A.2d 903 (Stein, J. concurring, discussing impact of suppression on subsequent statement); State v. Brown, 352 N.J.Super. 338, 800 A.2d 189 (App.Div. 2002) (discussing procedure for challenging statements taken incident to a Fourth Amendment violation). However, we believe that the admissibility of the statements at the retrial and their impact on the convictions for events occurring before October 20, 1998 should be developed before the trial judge after hearing arguments from both parties.
We find no other basis for reversing the convictions on the counts relating to the events occurring prior to October 20, 1998, although the issue of sentence should be reassessed after any retrial and final determination of the counts on which defendant is convicted.[3]
In light of defendant's pro se supplementary brief, we add only that it has been the law of New Jersey, long before Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that quantity, when relevant to the grade of offense or range of sentence, is an issue for the jury's consideration. See State v. Florez, 134 N.J. 570, 595-95, 636 A.2d 1040 (1994); State v. Moore, 304 N.J.Super. 135, 145-47, 698 A.2d 1259 (App.Div.1997); State v. Torres, 236 N.J.Super. 6, 13, 563 A.2d 1141 (App.Div.1989), certif. denied, 122 N.J. 153, 584 A.2d 222 (1990). In this case, the offenses were all of the third degree and the quantity was insignificant. Stated differently, the amount or quantity alleged was not sufficient to increase the defendant's sentence exposure. See also State v. Dixon, 346 N.J.Super. 126,139-41, 787 A.2d 211 (App.Div.2001), certif. denied, 172 N.J. 181, 796 A.2d 898 (2002) (regarding extended terms).
Accordingly, we vacate defendant's convictions on counts seven, eight and ten and remand to the Law Division for further proceedings consistent with this opinion.
NOTES
[1] The State sought to admit all the evidence found in the apartment, not just that which was initially observed upon execution of the warrant. See Segura v. United States, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), in which the evidence initially observed had been suppressed and not used in obtaining the warrant, and holding admissible the evidence not initially observed which was obtained upon execution of the warrant.
[2] The State has appended a transcript of the application for the search warrant at which detectives from the Somerset County Prosecutor's Office testified. One told the judge, in addition to all background information, that after defendant and his co-defendant were handcuffed, "in plain view in front of them we observed a plate containing [cocaine]." The detective also testified that his belief that other C.D.S. was present in the apartment was based on "information received from [the] confidential informant ... as well as the quantity that he or she observed ... within the apartment [and] the amount I saw in plain view was ... smaller than the amount that the CI had ... observed...."
[3] The issues concerning the extended term imposed under N.J.S.A. 2C:43-6f on count seven is rendered moot by our decision, and we do not address any issue which might arise at resentencing after the proceedings are completed.