**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2409
_____

KEVIN ANTHONY MARSH,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A060-010-154)
Immigration Judge: Pallavi Shirole
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 5, 2023

Before:  HARDIMAN, PORTER, and FREEMAN, <u>Circuit Judges</u>

(Opinion filed: February 14, 2023)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Kevin Marsh petitions for review of his final order of removal. We stayed his petition pending his pursuit of a motion for reconsideration before the Board of Immigration Appeals ("BIA"). The Government has filed a motion to lift the stay because the BIA has since denied reconsideration. We grant that motion and will dismiss in part and deny in remaining part Marsh's petition for review.

I.

Marsh is a citizen of Jamaica who was admitted to the United States as a lawful permanent resident in 2008. In 2019, he was convicted of possessing with the intent to distribute between five and 25 pounds of marijuana in violation of N.J. Stat. Ann. §§ 2C:35-5(a)(1) and 2C:35-5(b)(10)(b). The Government charged him as removable on the grounds that his conviction (1) was for an offense "relating to" a controlled substance, see 8 U.S.C. § 1227(a)(2)(B)(i), and (2) was an "illicit trafficking" aggravated felony, see 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii).

Marsh, through counsel, conceded the conviction but denied the charges and filed a motion to terminate his proceeding on the ground that his conviction does not render him removable. He did not apply for any other relief from removal. An Immigration Judge ("IJ") denied Marsh's motion and ordered his removal to Jamaica. Marsh appealed through counsel to the BIA, which affirmed. Marsh filed a petition for review of that ruling. He also filed a motion for reconsideration with the BIA in which he raised a new

2

legal argument. The BIA denied his motion for reconsideration on August 24, 2022, but Marsh has not filed a petition for review of that ruling.

II.

Marsh asks us to decide the issue that he raised before the BIA in his motion for reconsideration and that the BIA later rejected. In that motion, Marsh argued for the first time that his notice to appear did not include the time and date of his hearing as required by 8 U.S.C. § 1229(a)(1)(G)(i). He further argued that the BIA should terminate his proceeding for that reason because this defect either deprived the IJ of jurisdiction or violated claims-processing rules. The Government argues that we should dismiss Marsh's petition for review to this extent. We agree.

If this issue were truly jurisdictional, then we might have been obliged to decide it before reaching the merits. See Perez-Sanchez v. Att'y Gen., 935 F.3d 1148, 1153 (11th Cir. 2019). But as we have since clarified, § 1229(a) "is akin to a claims-processing rule." Chavez-Chilel v. Att'y Gen., 20 F.4th 138, 143 (3d Cir. 2021) (citing Perez-Sanchez, 935 F.3d at 1153-57). Thus, Marsh's argument is subject to the exhaustion requirement, see Perez-Sanchez, 935 F.3d at 1157, which is itself jurisdictional, see Nkomo v. Att'y Gen., 986 F.3d 268, 272 (3d Cir. 2021).

Marsh did not exhaust this issue as part of the proceeding giving rise to the order of removal that he challenges in this petition for review. Instead, Marsh later raised this issue in his motion to reconsider before the BIA and the BIA later denied it. The BIA's

3

denial of reconsideration is a separate final order that requires a separate petition for review. See Stone v. INS, 514 U.S. 386, 394-95, 405-06 (1995); Castro v. Att'y Gen., 671 F.3d 356, 364 (3d Cir. 2012). But Marsh has not filed a separate petition for review.[1] And Marsh's previously-filed petition for review is not effective to challenge the BIA's subsequent denial of reconsideration under the circumstances presented here. Cf. Marshall v. Comm'r Pa. Dep't of Corr., 840 F.3d 92, 96-97 & n.2 (3d Cir. 2016) (per curiam) (discussing, inter alia, Khan v. Attorney General, 691 F.3d 488 (3d Cir. 2012)).

Thus, we lack jurisdiction to consider this argument and will dismiss the petition for review to that extent. We nevertheless note that errors of the kind that Marsh alleges can be harmless and that Marsh has not raised anything suggesting that he was prejudiced. See Chavez-Chilel, 20 F.4th at 144.

## III.

Turning to the merits, Marsh argues that the BIA erred in concluding that his conviction under N.J. Stat. Ann. §§ 2C:35-5(a)(1) and 2C:35-5(b)(10)(b) relates to a controlled substance and is an aggravated felony. In reaching its conclusions, the BIA acknowledged that the New Jersey statute does not categorically match its federal counterpart because New Jersey controls more substances. But the BIA held that

---

[1] The only document that Marsh has filed with this Court since the BIA denied reconsideration is a letter pursuant to Fed. R. App. P. 28(j). Marsh filed that document beyond the 30-day period for filing a petition for review, see 8 U.S.C. § 1252(b)(1), and that document does not mention this issue or the BIA's denial of reconsideration in any

4

Marsh's conviction nevertheless relates to a controlled substance because (1) the New Jersey statute is divisible as to drug type, (2) drug type thus can be determined by using the modified categorical approach and looking to Marsh's conviction documents, (3) those documents reveal that the drug was marijuana, and (4) marijuana is federally controlled. The BIA also held that Marsh's marijuana conviction is punishable as a federal drug felony and therefore constitutes an aggravated felony.

Marsh's only challenge to these rulings is that the BIA erred at the first of these steps in holding that the New Jersey statute is divisible as to drug type. We disagree. A statute is divisible if it lists alternative elements that define separate crimes but not if it lists separate factual means of committing a single crime. See Mathis v. United States, 579 U.S. 500, 504-06, 509 (2016). "If statutory alternatives carry different punishments, then under Apprendi [v. New Jersey, 530 U.S. 466 (2000)] they must be elements." Id. at 518.

We have not addressed in a precedential opinion whether N.J. Stat. Ann. § 2C:35-5 is divisible as to drug type. Cf. Martinez v. Att'y Gen., 906 F.3d 281, 287 (3d Cir. 2018) (noting petitioner's concession that the statute is divisible). But we have held that Pennsylvania's analogous statute is. See United States v. Abbott, 748 F.3d 154, 158-59 (3d Cir. 2014) (addressing 35 Pa. Stat. Ann. § 780-113(a)(30)); see also Hillocks v. Att'y Gen., 934 F.3d 332, 344 (3d Cir. 2019) (summarizing Abbott). We reasoned that,

event. Marsh's Rule 28(j) letter is addressed later in this opinion.

although the Pennsylvania statute criminalizes "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance" generally, Abbott, 748 F.3d at 158, "the type of controlled substance involved in a violation of [the statute] alters the prescribed range of penalties. Accordingly, the type of drug, insofar as it increases the possible range of penalties, is an element of the crime. Because [the statute] can be violated by the possession of and intent to distribute many different drugs, the types of which can increase the prescribed range of penalties, the statute includes several alternative elements and is therefore divisible." Id. at 159.

As the BIA held, the same is true of the New Jersey statute at issue here. The statute begins by criminalizing possession of any controlled substance, see N.J. Stat. Ann. § 2C:35-5(a)(1), but it goes on to prescribe different penalty ranges depending on the type and quantity of the substance involved. See N.J. Stat. Ann. § 2C:35-5(b); see also N.J. Stat. Ann. § 2C:43-6 (prescribing different penalty ranges for different degrees of offenses). Because the different controlled substances "carry different punishments, then under Apprendi they must be elements." Mathis, 579 U.S. at 518.

Marsh does not acknowledge Abbott or this reasoning. Instead, he argues that certain state-court decisions indicate that the statute is not divisible as to drug type. See State v. Torres, 563 A.2d 1141, 1145 (N.J. Super. Ct. App. Div. 1989); see also State v. Moore, 698 A.2d 1259, 1264 (N.J. Super. Ct. App. Div. 1997) (summarizing Torres); State v. Edwards, 607 A.2d 1312, 1313-14 (N.J. Super. Ct. App. Div. 1992) (same). In

6

Torres, the court stated that "the quantity and quality [of controlled substances] <u>are not</u> <u>elements</u> of the [§ 2C:35-5] offense and, therefore, the State need not prove and the jury need not find that the defendant knew the quantity or the quality of the controlled dangerous substances involved." <u>Torres</u>, 563 A.2d at 1145 (emphasis added).

But <u>Torres</u> preceded <u>Apprendi</u> and does not appear to have used the word "element" in the sense in which <u>Mathis</u> used it for purposes of the categorical approach. That point is confirmed by the preceding discussion in <u>Torres</u>, in which the court stated that "the jury must find beyond a reasonable doubt the existence of critical facts required to elevate the degree or gradation of crime." <u>Id.</u> at 1144. Thus, the court continued, "we hold that in prosecutions under N.J.S.A. 2C:35-5 the jury must find that defendant manufactured, distributed, dispensed or possessed the relevant quantity or quality of [controlled dangerous substances] by proof beyond a reasonable doubt." <u>Id.</u> at 1145.

In sum, <u>Torres</u> holds that a jury must find beyond a reasonable doubt the type and quantity of drug involved in a § 2C:35-5 offense because the type and quantity "alters the prescribed range of penalties." <u>Abbott</u>, 748 F.3d at 159. Thus, drug type is an element of the § 2C:35-5 offense for purposes of determining divisibility under the categorical approach. <u>See id.</u>; <u>see also</u> <u>In re Laguerre</u>, 28 I. & N. Dec. 437, 441 (BIA 2022) (holding that the references to "elements" in <u>Torres</u> and <u>Edwards</u> do not resolve the divisibility of N.J. Stat. Ann. § 2C:35-10 because, inter alia, "those State decisions did not give the term 'elements' the precise meaning and significance the Supreme Court did in <u>Mathis</u>"); <u>State</u>

7

v. Florez, 636 A.2d 1040, 1052 (N.J. 1994) (holding that drug quantity is an element of § 2C:35-5).

IV.

For these reasons, we will dismiss Marsh's petition to the extent that he seeks relief on the basis of his allegedly defective notice to appear and will otherwise deny his petition.[2]

---

[2] Marsh raises a new argument for the first time in his Rule 28(j) letter.  He argues that his marijuana conviction cannot constitute a removable offense because, at the time of his conviction, New Jersey's definition of marijuana included more forms of hemp than federal law. But see United States v. Lewis, --- F.4th ---, 2023 WL 411362 (3d Cir. Jan. 26, 2023).  We lack jurisdiction to consider this argument because Marsh did not exhaust it by raising it before the BIA.  We express no opinion on whether Marsh could properly raise this issue in a motion for reconsideration or reopening before the BIA.